STATE of Missouri, Respondent,

v.

Patrick S. O'NEAL, Appellant.

No. ED 95274.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 29, 2011.

Matthew Ward, Columbia, MO, for appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for respondent.

## OPINION

MARY K. HOFF, Judge.

Patrick S. O'Neal (Defendant) appeals from the judgment upon his conviction by a jury for attempted stealing, in violation

of Section 570.030, RSMo Cum.Supp.2005, for which Defendant was sentenced to four-years' imprisonment. We reverse.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: On the evening of September 10, 2006, O'Fallon Police Officer Jacob Knopfel (Officer Knopfel) received a call that security cameras at Bobcat of St. Louis had detected a person on the outside of the premises, attempting to steal items. After arriving at the scene, Officer Knopfel received a call that the intruder was no longer visible on the security cameras. Officer Knopfel proceeded to jump a locked fence and approached the front of the building. After jumping the fence, he heard a noise in the back of the lot and continued in that direction. While shining his flashlight, Officer Knopel saw Defendant, who was dressed in boots, shorts, a shirt, knee pads, and a baseball cap. Officer Knopfel identified himself and told Defendant that he was under arrest. Defendant looked at Officer Knopfel and then ran to the back of the lot. Defendant then jumped over a fence and ran into the woods. Officer Knopfel followed until he got about ten feet into the woods but then stopped and waited for a K–9 unit to arrive.

Shortly after arriving, the canine picked up Defendant's scent and began following it with his handler, Officer Keith Lewis (Officer Lewis), and Officer Knopfel. During their pursuit, the officers found a pair of vise-grip pliers, a hat, two bandanas, a t-shirt, knee pads, and a flashlight.

Eventually the canine lost the scent, but Officer Lewis noticed fresh tire tracks in the gravel. Some tires and pallets had been placed next to the inside of the fence that Defendant had climbed over and would have aided someone in climbing over the fence or placing items on the outside of the fence. A sack was just outside the fence along with two orange wheels. Inside the sack, were parts and items belonging to Bobcat. A Bobcat representative testified that the value of those items, in addition to the wheels, exceeded $500.

Upon further inspection of the premises, police found a pick-up truck parked about twenty feet outside the fence surrounding the Bobcat building. On the truck's seat, there was a street guide with directions to the Bobcat location. The truck was traced back to Defendant. It was brought back to the O'Fallon Police Department and placed in the sally port.

The next day, Defendant voluntarily arrived at the O'Fallon Police Department asking about his vehicle. Officer Knopfel met Defendant in the lobby and immediately recognized him as the intruder on the Bobcat lot. He also noticed that Defendant was wearing the same shorts and boots as the previous night. Officer Knopfel placed Defendant under arrest.

At trial, Officer Knopfel viewed the surveillance video footage and identified Defendant as the person shown in the video and the person that he pursued on the night of September 10, 2006. The video was played for the jury. Defendant did not testify on his own behalf.

At the close of all evidence, the jury found Defendant guilty of attempted stealing of property worth more than $500 and the trial court sentenced him to four-years' imprisonment. This appeal follows.

### Discussion

█ In his sole point on appeal, Defendant argues the trial court abused its discretion in overruling Defendant's motion for mistrial after the prosecutor stated in front of the jury that Defendant's medical records should not be admitted into evi-

dence because, "[i]t's simply a way to avoid the defendant testifying as a way to entering statements that he would have made that have no basis, other than his statement." Defendant contends that this comment violated his rights to due process, a fair trial before a fair and impartial jury, and to not be penalized for not testifying, because Defendant did not testify and the prosecutor's comments impermissibly drew attention to the fact that he exercised his freedom from self-incrimination and right not to testify. We agree.

 We review a trial court's refusal to grant a mistrial for abuse of discretion. *State v. McGowan,* 184 S.W.3d 607, 610 (Mo.App. E.D.2006). We will find that the trial court abused its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* When considering a defendant's claim of an improper comment on his right against self-incrimination, we must consider the comment in the context in which it appears. *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). Such references are improper because they violate a defendant's freedom from self-incrimination and right not to testify as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Missouri Constitution. *Neff,* 978 S.W.2d at 344; *see also* Section 546.270, RSMo 2000; Rule 27.05(a). "Where an objection is made and overruled, a direct reference to a defendant's failure to testify will almost invariably require reversal." *McGowan,* 184 S.W.3d at 610 (*citing Neff,* 978 S.W.2d at 344). A direct reference will include words such as "testify," "accused," or "defendant," or their equivalent. *Id.* at 611.

Here, during a recess after the State rested its case and before Defendant presented his evidence, the prosecutor objected in advance to defense counsel's intent to present Defendant's medical records into evidence with a business records affidavit without accompanying medical testimony. Following lengthy discussion by the parties, the trial court made the following ruling:

> Here's what I'm going to do. I'm going to allow the admission of these into evidence, but I am not going to allow you to argue what they mean....I'll let them come in under the business exception, but you're not a doctor, and you're telling me there's going to be no evidence as to interpreting what these mean. So then you can't argue.

Later, during the presentation of Defendant's evidence and in the presence of the jury, defense counsel moved to admit Defendant's medical records. The following exchange then occurred:

> [DEFENSE COUNSEL]: The defense moves to admit medical records provided with an affidavit.
>
> THE COURT: This would be Exhibit—
>
> [DEFENSE COUNSEL]: Exhibit C.
>
> THE COURT: Is there an objection?
>
> [PROSECUTOR]: Yes, your Honor. I do object.
>
> THE COURT: You may proceed.
>
> [PROSECUTOR]: They contain hearsay statements. It's simply a way to avoid the defendant testifying as a way to entering statements that he would have made that have no basis, other than his statement. There's no objective testing such as x-rays or MRIs or other like lab procedures to corroborate any statements that are made in the records. There is no interpretation. They range from 1996 all the way past

this incident into 2010. They are—the majority of them are not legible, and I don't believe they are helpful and therefore relevant or probative on an issue in this case, and I would ask that you exclude them.

THE COURT: Okay. [Defense counsel]?

[DEFENSE COUNSEL]: Your Honor, I believe they are relevant as to my client's condition, and I believe that they are admissible.

THE COURT: Okay. The Court will receive into evidence Defendant's Exhibit C.

[DEFENSE COUNSEL]: I have another objection. May we approach?

THE COURT: Yes.

[DEFENSE COUNSEL]: I believe the prosecution stepped out of line when making an objection leading to my client's right not to testify. I think that the statement that he's showing these records in an attempt to avoid (sic) testify, when he has a constitutional right not to.

THE COURT: What do you want me to do?

[DEFENSE COUNSEL]: Honestly, that would require a mistrial. Prosecution testified making an objection and making comments about the defendant's right not to testify. It's mistrial materials, and I'm completely—

THE COURT: Is that what you're asking?

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: Overruled. Anything further?

[DEFENSE COUNSEL]: I ask that you instruct the prosecutor not to make any more comments about my client's right not to testify.

[PROSECUTOR]: I was not making a comment on his right not to testify. I indicated there were statements made by the defendant that are self-serving in there, and it's a way to get them in without him testifying.

[DEFENSE COUNSEL]: You said a way for him to avoid testifying.

[PROSECUTOR]: And getting his statements—

THE COURT: Anything further . . . ?

[DEFENSE COUNSEL]: No.

In his motion for new trial, Defendant claimed, *inter alia,* that the trial court erred in denying his request for a mistrial after the State made, in the presence of the jury, a speaking objection to the admission of his medical records by stating that he was attempting to admit the records in order to avoid testifying. At the hearing on the motion, the prosecutor stated,

It was—I think it's a hearsay objection. . . . I mean, there was a lot of things objecting to the medical records that was taken up at the bench and then on the record. . . . But certainly it was that he was—it was hearsay. He was trying to get testimony in without testifying. I don't think it was. It was simply a hearsay and trying to get testimony in without taking the stand. It was not commenting on his constitutional rights.

Here, the prosecutor made a direct reference to Defendant's failure to testify, defense counsel objected, and the trial court overruled the objection. As Defendant correctly points out, the prosecutor's comment was especially "egregious" because there had previously been a lengthy discussion concerning the medical records and the State's objection to their admission. The trial court had overruled the objection and allowed the records into evidence with limitations on defense counsel's ability to argue about the records. Additionally, as Defendant asserts, the prosecutor had already made essentially the same

argument during the previous recess out of the presence of the jury, and the trial court had already stated that the objection would be overruled. The prosecutor's objection, made in the jury's presence, may have prejudiced the jury against Defendant for using the medical records in his defense rather than testifying himself. Such reference violated Defendant's rights to freedom from self-incrimination and to not testify. *Neff*, 978 S.W.2d at 344; *McGowan*, 184 S.W.3d at 610. Although the State claims Defendant could have asked for lesser relief than a mistrial, we do not believe any other remedy would have been sufficient to counteract the direct reference to Defendant's right to not testify. As such, the trial court abused its discretion in denying Defendant's motion for mistrial. Point granted.

### Conclusion

We reverse Defendant's conviction and remand for a new trial.

ROBERT G. DOWD, JR., Presiding Judge, and SHERRI B. SULLIVAN, Judge, concur.